# UNITED STATES DISTRICT COURT

for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black iPhone Model/13<br>Seizure No. 2023565100000301 Item: 002<br>("Target Device") | )<br>)<br>) Case No.  '22 MJ04164<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the   Southern   District of   California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC Sec. 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Salvador Diaz Jr*
*Applicant's signature*

Saldavor Diaz Jr, U.S. Border Patrol Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
  telephone   *(specify reliable electronic means)*.

Date:  November 8, 2022

*Judge's signature*

City and state:  San Diego, California     Hon. Michael S. Berg, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:
    Black iPhone Model/13
    Seizure No. 2023565100000301 Item: 002
    ("Target Device")

Target Device is currently in the possession of United States Border Patrol at 3752 Beyer Boulevard, Building 24, San Ysidro, California 92173.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of September 28, 2022, up to and including October 28, 2022:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;
b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;
c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;
d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;
e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or
f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which is evidence of violations of Title 8, United States Code, Section 1324.

# AFFIDAVIT

I, Agent Salvador Diaz Jr, United States Border Patrol, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

>Black iPhone Model/13
>Seizure No. 2023565100000301 Item: 002
>("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 8, United States Code, Section 1324 (alien smuggling) as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Aaron Perez ("Defendant") for knowingly transporting six aliens within the United States in order to help said aliens remain in the United States illegally. Defendant was arrested on October 28, 2022 and is pending a criminal case in the Southern District of California. For the reasons set forth herein, I believe there is probable cause to believe that the Target Device contains evidence of alien-smuggling, and I believe this device relates to and contains evidence relevant to Defendant's offenses. The Target Device is currently in the custody of the United States Border Patrol at 3752 Beyer Boulevard, Building 24, San Ysidro, California 92173.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I am a Border Patrol Agent (BPA) with the United States Border Patrol ("USBP") of the United States Department of Homeland Security, Bureau of Customs and Border Protection. I have been an agent for approximately 13 years. I am assigned to the San Diego Sector Intelligence Unit – San Clemente Station Intelligence Team. Over the course of my time at the Sector Intelligence Unit, my primary duties include the collection of information, the analysis of information and creation of intelligence reports and their dissemination across law enforcement partners. These efforts develop and enhance the operational knowledge of our adversaries. Through the course of my official duties over the past 13 years I have prepared criminal cases and executed warrants for violations of 8 U.S.C. § 1324 (Human smuggling) and 8 U.S.C. § 1326 (Reentry of removed aliens) in the Southern District of California and Central District of California.

5. In the past several years, I have experience in the exploitation of electronic devices such as cellular phones and global positioning devices. I have used the lawfully obtained information to assist in alien smuggling and narcotic smuggling cases.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.

7. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, e.g., remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point

operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones

that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

11. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation. Instead, it contains only those facts believed to be necessary to establish probably cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with U.S. Border Patrol Agents and my personal observations and knowledge.

## FACTS SUPPORTING PROBABLE CAUSE

12.   On October 28, 2022, at approximately 11:20 a.m., the San Clemente Border Patrol Station Dispatch received a call from the San Diego Sector Tactical Communication Center relaying information from a concerned citizen reporting that a possible alien smuggling event had taken place. The concerned citizen identified a Black Dodge Charger bearing California license plate, 8YCK096 as the suspected alien smuggling vehicle.

13.   According to Border Patrol Agent (BPA) F. Ramirez's arrest report, at approximately 11:22 a.m., he responded to the area of the citizen report.  BPA Ramirez was traveling west on Basilone Road when he observed a Black Dodge Charge traveling east. BPA Ramirez observed three people through the front windshield in the front seats of the vehicle.  In BPA Ramirez' experience, Dodge Chargers come standard with two bucket seats in the front seat area.  BPA Ramirez conducted a u-turn and proceeded to follow the Dodge Charger.  The Dodge Charger got on the southbound ramp to Interstate 5, (I-5) from Basilone Road.

14.   BPA Ramirez followed close enough to confirm the vehicle's license plate, which was CA plate 8YCK096, which is the vehicle reported earlier for suspected alien smuggling.  The vehicle continued to travel south on I-5 in lane 2.  At one point, BPA Ramirez was able to observe two subjects in the front passenger seat, meant for one passenger, trying to conceal themselves by slouching and turning their faces away from BPA Ramirez' direction.  The two front passengers appeared not to have their seatbelts on. BPA Ramirez was also able to identify the driver.  The driver had prescription glasses, black shirt, heavy set, and with a mustache.

15.   BPA Ramirez was also able to observe the silhouette of more than three subjects in the rear passenger seat. To his knowledge, Dodge Chargers could only seat three people safely in the rear seat with seat belts. Based on his observations, BPA Ramirez reasonably suspected that the Black Dodge Charger was currently involved with criminal activity and possibly smuggling illegal subjects.

16. The vehicle yielded to BPA Ramirez one half mile south of the Las Pulgas Road exit. Agents approached the vehicle and identified themselves to the driver, later identified as Defendant and performed an immigration inspection on the driver and all subjects in the vehicle. Defendant claimed to be a United States citizen and the six passengers each admitted to being citizens of Mexico and further admitted that they did not have any documentation which would allow them to be legally present in the United States. At approximately 11:36 a.m., Defendant was placed under arrest for violation of Title 8, United States Code, Section 1324 (Alien Smuggling) and was secured in a marked United States Border Patrol vehicle. The other six subjects were placed under arrest for being illegally present in the United States.

17. Border Patrol Agents interviewed three of the aliens found in Defendant's vehicle.

    a. Mr. Javier Garcia Sanchez stated he was born in Mexico and is a citizen of Mexico without any immigration documents entitling him to enter or be in the United States legally. Mr. Garcia stated he crossed into the United States earlier that day by jumping over a fence near Tijuana. An unknown male instructed Mr. Garcia to wait in a bush near the highway for a black car that was going to take him to Escondido, California. Mr. Garcia stated the driver of the black car instructed him to get into the vehicle along with the five other people he was with. Mr. Garcia said they were in the vehicle for an hour to an hour and half and the car did not stop. During the car ride, Mr. Garcia observed the driver on the phone with someone with an area code of "825." Mr. Garcia identified the driver as Defendant in a photo line-up.

    b. Ms. Emilia Del Carmen Sanchez-Chacon stated she was born in Mexico and is a citizen of Mexico without any immigration documents entitling her to enter or be in the United States legally. Ms. Sanchez stated she crossed into the United States on October 27, 2022, around 6:00 PM by walking through the desert/mountains near Tijuana, Mexico with four other people. Ms.

        Sanchez stated they walked to the meet-up location around 8:00 AM where they were instructed to wait to be picked up. Two younger males joined her group along the way. After the vehicle picked them up, Ms. Sanchez stated they drove without stopping. Ms. Sanchez stated the driver drove aggressively in attempt to get away from a vehicle that was following them until they were ultimately apprehended by Border Patrol Agents. Ms. Sanchez identified the driver as Defendant in a photo line-up.

    c.    Ms. Ana Laura Santos Bautista stated she was born in Mexico and is a citizen of Mexico without any immigration documents entitling her to enter or be in the United States legally. Ms. Santos stated she crossed into the United States on October 28, 2022, around 7:00 AM near Otay Mesa, California by jumping over the fence. An unknown male instructed Ms. Santos to wait in the brush near the highway for a vehicle for one to two hours. Ms. Santos identified the driver of the vehicle that picked them up as Defendant in a photo line-up.

18.    Defendant was advised of his rights under Miranda and elected to make a statement. During the interview, Defendant stated he lives in Escondido, California. Defendant reported that he went to work in that morning, and then went on a drive to San Marcos, California. While driving around in San Marcos, Defendant stated the six passengers came up to him and asked him for a ride to Oceanside, California. Defendant stated he felt they might be in danger, so he agreed to give them a ride to Oceanside because he was already driving that direction. Defendant stated that immediately after he started driving to Oceanside, he noticed he was being followed by a Grey four-door Hyundai, with two people in it. Defendant stated the car was driving aggressively and, in an effort, to get away from the car, he sideswiped a fire hydrant on the driver's side of his car. Defendant stated the car followed him to Oceanside. Defendant stated to get away from the car, he drove northbound on Interstate 5 until he exited on a random exit. Defendant stated that he was not attempting to smuggle aliens, because he had passed the Border Patrol Station, and

voluntarily returned southbound. Upon being questioned about inconsistencies in his narrative, Defendant invoked and the interview was terminated.

19. The Target Device was found and seized by a Border Patrol Agent. The Target Device were found in Defendant's pocket. During the interview, Defendant was shown the Target Device and identified the Target Device as belonging to him. The Target Device was not downloaded at the time of Defendant's arrest because Defendant did not provide consent.

20. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe Defendant was using the Target Device to communicate with others to further the alien smuggling operation. Further, in my training and experience, alien smuggling coordinators may be involved in the planning and coordination of an alien smuggling event in the days and weeks prior to an event. Based on my training and experience, it is also not unusual for individuals, such the Defendant in this case, to attempt to minimize the amount of time he was involved in his smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on September 28, 2022, up to and including October 28, 2022.

## METHODOLOGY

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary

word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## CONCLUSION

24. Based on the facts and information set forth above, there is probable cause to believe that a search of the Target Device will yield evidence of Defendant's violations of Title 8, United States Code, Section 1324. Accordingly, I request that the Court issue a

warrant authorizing law enforcement to search the Target Device, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Salvador Diaz Jr*
Agent Salvador Diaz Jr
United States Border Patrol Agent

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this __8th__ day of November, 2022.

_____
Honorable Michael S. Berg
United States Magistrate Judge